ORIGINAL

WFlores.Ind

NOEL L. HILLMAN
Chief, Public Integrity Section
Department of Justice
RUSSELL C. STODDARD
First Assistant United States Attorney
JOSEPH F. WILSON
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Ave.
Hagåtña, Guam 96910
TEL: (671) 472-7332
FAX: (671) 472-7334

Attorneys for the United States of America

FILED
DISTRICT COURT OF GUAM
MAR 3 1 2005
MARY L.M. MORAN
CLERK OF COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF GUAM

05-00031

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff.<br><br>vs.<br><br>WILLIAM BRUCE SAN MIGUEL FLORES,<br>also known as WILLY FLORES,<br><br>Defendant. | CRIMINAL CASE NO. _____<br><br>**INDICTMENT**<br><br>**BANK FRAUD**<br>[18 U.S.C. §§ 1344(2) and 2] (COUNT 1)<br>**BANK FRAUD CONSPIRACY**<br>[18 U.S.C. § 371] (COUNT 2)<br>**MONEY LAUNDERING CONSPIRACY**<br>[18 U.S.C. § 1956(h)] (COUNT 3)<br>**MONEY LAUNDERING**<br>[18 U.S.C. §§ 1956(a)(1)(B)(i) and 2]<br>(COUNTS 4)<br>**MONEY LAUNDERING**<br>[18 U.S.C. §§ 1956(a)(1)(A)(i) and 2]<br>(COUNTS 5, 6, 8, 9 and 10)<br>**ENGAGING IN MONETARY TRANSACTIONS IN PROPERTY DERIVED FROM SPECIFIED UNLAWFUL ACTIVITY**<br>[18 U.S.C. §§ 1957 & 2]<br>(COUNT 7) |

THE GRAND JURY CHARGES:

### INTRODUCTION

At all times material to this Indictment:

1. <u>William Bruce San Miguel Flores</u>: William Bruce San Miguel Flores, also known as Willy Flores, hereinafter sometimes referred to as "Defendant FLORES," is charged and made a defendant herein. Defendant FLORES was licensed in the Territory of Guam and registered by

the Guam Board of Registration for Professional Engineers, Architects & Land Surveyors as a Civil Engineer. Flores was the majority shareholder and President of Blue Mafuti, Incorporated, doing business as W. B. Flores and Company. Flores was elected a Senator in November 1996 and served from January 1997 to January 1999 in the 24th Guam Legislature.

2. W. B. Flores and Company: W. B. Flores and Company primarily engaged in business ventures that provided Civil Engineering and Construction Management Services. Occasionally, W. B. Flores and Company conducted business as contractors for civil and building works. W. B. Flores and Company derived significant business from the delivery of services to contractors engaged in capital improvement projects with the Government of Guam including the Tumon Beautification Project.

3. Gil A. Shinohara: Gil A. Shinohara, also known as Gil Shinohara, hereinafter sometimes referred to as "Shinohara," an un-indicted co-conspirator, was a Special Assistant to and occupied the position of Chief of Staff for the Governor of Guam. In that capacity, Shinohara was an agent of the Government of Guam and possessed all the powers and duties of that office. At diverse times when appointed by the Governor, Shinohara was also the Acting Director of the Department of Public Works.

4. Takahisa Goto: Takahisa Goto, hereinafter sometimes referred to as "Goto", an unindicted co-conspirator, was the majority stockholder and President of Port Enterprises (Guam), Incorporated, doing business as Daikin.

5. Port Enterprises (Guam), Incorporated: Port Enterprises (Guam), Incorporated, doing business as Daikin, was a business on Guam that installed and repaired air conditioning units and systems. Port Enterprises (Guam), Incorporated, doing business as Daikin, hereinafter sometimes referred to as "Port Enterprises" and as "Daikin" as appropriate, contracted with the Government of Guam numerous times and profited from the procurements by the Departments, Agencies and Authorities of the Government of Guam.

//

6. <u>The Bank of Guam</u>: The Bank of Guam was a financial institution doing business on Guam and elsewhere, and was engaged in and the activities of which affected interstate and foreign commerce. The deposits and accounts at the Bank of Guam were insured by the Federal Deposit Insurance Corporation.

7. <u>Pedro's Plaza</u>: Pedro's Plaza was a commercial property comprised of, among other things, five lots of real property, a seven story office building, and related and other improvements. Pedro's Plaza was located at 351 West O'Brien Drive, Hagåtña, Guam.

8. <u>Keun Yil Kim</u>: Keun Yil Kim, hereinafter sometimes referred to as "Kim," an unindicted co-conspirator, was the majority stockholder and President of Rex International, Incorporated.

9. <u>Rex International, Incorporated</u>: Rex International, Incorporated, hereinafter sometimes referred to as "Rex International" and as "Rex" as appropriate, was formed under the laws of and did business on Guam. Rex International principally engaged in business as builders and contractors for, among other things, the construction of roads, avenues, bridges, and generally all classes of buildings, erections and works, both public and private. The Government of Guam's Department of Public Works awarded Rex International a contract as general contractor to construct the Route 16 Underpass.

10. <u>The Partners</u>: Defendant FLORES, together with Shinohara, Goto, Flores and Kim, formed an informal partnership, hereinafter sometimes referred to as "the Partners." The partnership was formed for either the direct or indirect financial benefit of each partner. The Partners intended to profit from either the lease or sale of Pedro's Plaza following its purchase, renovation and repair. Goto's and Kim's reasons for participating in the partnership's actions, including the false statements to the Bank of Guam, included their belief that Shinohara, in his government positions, would facilitate payments on their companies' contracts with the Government of Guam and which facilitation Shinohara provided.

//

-3-

11. <u>The Loan</u>: The Bank of Guam made a term loan, hereinafter sometimes referred to as "the Loan", to the Partners in the amount of Three Million Dollars ($3,000,000) for the purchase, and the subsequent renovation and repair of Pedro's Plaza. Two Million Dollars ($2,000,000) of the Loan was purchase money and the remaining One Million Dollars ($1,000,000) was held in reserve for renovations and repairs. The disbursement of moneys for renovations and repairs was contingent upon, among other things, documentation of the costs of making such renovations and repairs, and providing sufficient collateral.

12. <u>The $300,000 disbursement</u>: At about the time the purchase money was delivered, the Bank of Guam agreed there was sufficient collateral for the disbursement of an additional Three Hundred Thousand dollars ($300,000) for renovations and repairs. The Bank of Guam, however, required that the Partners provide documentation of the expected costs for making the planned renovations and repairs. Three Hundred Thousand Dollars ($300,000) was disbursed to the Partners, hereinafter sometimes referred to as "the $300,000 disbursement", after estimates and quotations were presented, and representations and promises were made that the Partners intended to use the moneys to purchase and install air conditioning units, windows and doors. Pedro's Plaza was at all time the collateral held as security by the Bank of Guam for the Loan made to the Partners.

## COUNT 1- BANK FRAUD
[18 U.S.C. §§ 1344 and 2]

### THE SCHEME AND ARTIFICE

13. Paragraphs 1 through 12 of the Introduction of this Indictment are hereby adopted, realleged, and incorporated by reference as if fully set forth herein.

14. Beginning as early as in about December 1997 and continuing thereafter until sometime in about August 1998, more exact dates being unknown to the Grand Jury, in the District of Guam, the defendant, WILLIAM BRUCE SAN MIGUEL FLORES, also known as WILLY FLORES, and others known and unknown to the Grand Jury, knowingly devised and

-4-

intended to devise a scheme and artifice to obtain moneys, funds and credits owned by and under the custody and control of the Bank of Guam by means of materially false and fraudulent pretenses, representations and promises.

15. It was a purpose of the scheme and artifice to obtain moneys, funds and credits by means of materially false and fraudulent pretenses, representations and promises, hereinafter sometimes referred to as "the Scheme", to unlawfully enrich Defendant FLORES, and others known and unknown to the Grand Jury, through the conversion of moneys, funds and credits obtained from the disbursement of $300,000 by the Bank of Guam for renovations and repairs at Pedro's Plaza to their personal benefit.

16. It was part of the Scheme that Defendant FLORES, and others known and unknown to the Grand Jury, made and caused to be made, materially false and fraudulent representations for the purpose of inducing the Bank of Guam to disburse Three Hundred Thousand Dollars ($300,000) from the Loan for renovations and repairs at Pedro's Plaza.

17. It was a further part of the Scheme that Defendant FLORES, and others known and unknown to the Grand Jury, knowingly submitted and caused to be submitted, documentation intended to deceive and mislead the Bank of Guam that the $300,000 disbursement would be used for renovations and repairs of Pedro's Plaza, when in fact, as Defendant FLORES well knew, such moneys, funds and credits would be used for his personal benefit.

### THE EXECUTION OF THE SCHEME

18. From on about the 27th day of May, 1998 and continuing thereafter until sometime in about August 1998, Defendant FLORES, together and with others, known and unknown to the Grand Jury, executed the scheme and artifice to obtain moneys, funds and credits by means of materially false and fraudulent pretenses, representations and promises, as set forth above in paragraphs 13 through 17, inclusive, of Count 1, in that they submitted and caused to be submitted a letter from the Partners requesting the Bank of Guam release Three Hundred Thousand Dollars ($300,000) from the Loan for the renovation and repair of air conditioning

units, doors and windows at Pedro's Plaza. After the $300,000 disbursement by the Bank of Guam, the Partners used the money for personal purposes unrelated to the renovations and repairs of the Bank of Guam's collateral, Pedro's Plaza.

All in violation of Title 18, United States Code, Sections 1344(2) and 2.

## COUNT 2 - BANK FRAUD CONSPIRACY
[18 U.S.C. § 371]

19. Paragraphs 1 through 12 of the Introduction of this Indictment are hereby adopted, realleged, and incorporated by reference as if fully set forth herein.

### CONSPIRACY

20. Beginning as early as sometime in about December 1997 and continuing thereafter until sometime in about August 1998, more exact dates being unknown to the Grand Jury, in the District of Guam, the defendant, WILLIAM BRUCE SAN MIGUEL FLORES, also known as WILLY FLORES, together with others known and unknown to the Grand Jury, did unlawfully, wilfully and knowingly combine, conspire, confederate, and agree, together and with each other, to commit an offense against the United States, to wit, bank fraud, in violation of Title 18, United States Code, Sections 1344(2) and 2.

### MANNER AND MEANS OF THE CONSPIRACY

Among the manner and means by which Defendant FLORES, together with others known and unknown to the Grand Jury, carried out the conspiracy were the following:

21. It was a part of the conspiracy that Defendant FLORES, together with his co-conspirators, executed, and attempted to execute, a scheme and artifice to obtain moneys, funds, and credits owned by and under the custody and control of the Bank of Guam by means of materially false and fraudulent pretenses, representations and promises.

22. It was further a part of the conspiracy that Defendant FLORES, and others known and unknown to the Grand Jury, converted, and caused to be converted, the moneys, funds, and

-6-

credits obtained from the Bank of Guam for the renovations and repairs at Pedro's Plaza to their personal benefit.

23. It was further a part of the conspiracy that Defendant FLORES, and others known and unknown to the Grand Jury, made, and caused to be made, materially false and fraudulent representations for the purpose of inducing the Bank of Guam to disburse Three Hundred Thousand Dollars ($300,000) for renovations and repairs at Pedro's Plaza.

24. It was further a part of the conspiracy that Defendant FLORES, and others known and unknown to the Grand Jury, knowingly submitted and caused to be submitted, documentation intended to deceive and mislead the Bank of Guam that the Three Hundred Thousand Dollar ($300,000) disbursement would be used for renovations and repairs of Pedro's Plaza.

## OVERT ACTS

In furtherance of the conspiracy and in order to effect the objectives thereof, Defendant FLORES and his co-conspirators performed the following overt acts, among others, in the District of Guam:

25. On about May 11, 1998, Defendant FLORES, submitted a letter containing false statements, including but not limited to, that labor for the renovations and repairs of the air conditioning units, the doors and windows at Pedro's Plaza would be performed by "Rex" and "Daikin".

26. On about May 27, 1998, the Partners, including Defendant FLORES, and others known to the Grand Jury, signed and sent, and caused to be signed and sent, a letter to the Bank of Guam requesting that Three Hundred Thousand Dollars ($300,000) be disbursed to "facilitate the commencement of renovations and repairs."

27. On about May 29, 1998, a Three Hundred Thousand Dollar ($300,000) disbursement was deposited into a bank account at the Bank of Guam, Account Number 0101-091881, which was owned and controlled by Defendant FLORES.

28. On about June 1, 1998, Shinohara instructed Defendant FLORES to disburse Fifty Thousand Dollars ($50,000) of the moneys, funds and credits that the Partners, including Defendant FLORES, had promised to use for renovations and repairs at Pedro's Plaza to Shinohara from Flores' account at the Bank of Guam, which account is more particularly described above in Paragraph 27 of this Indictment and is hereinafter referred to as "the Flores Bank of Guam account." Thereafter, following Shinohara's instructions, Defendant FLORES converted a check, Number 2240, dated June 1, 1998, payable to the Bank of Guam in the amount of Fifty Thousand Fifteen Dollars ($50,015), drawn on the Flores Bank of Guam account into two (2) Bank of Guam cashier's checks, Numbers 589138 and 589139.

29. On about June 2, 1998, Shinohara caused a Bank of Guam cashier's check, Number 589138, dated June 1, 1998, made payable to Connie Jo Leon Guerrero in the amount of Twenty Thousand Dollars ($20,000), all of which moneys were proceeds of the bank fraud activity, to be deposited into an account at the Government of Guam Employees Federal Credit Union, Account Number 5866416680, which was owned and controlled by Connie Jo Leon Guerrero.

30. On about June 3, 1998, Defendant FLORES delivered a check, Number 2829, dated June 3, 1998, made payable to Rex International in the amount of One Hundred Thirty Thousand Dollars ($130,000), drawn on the Flores Bank of Guam account, all of which moneys were proceeds of the bank fraud activity, to Keun Yil Kim, a co-conspirator of Shinohara.

31. On about June 3, 1998, Kim deposited the One Hundred Thirty Thousand Dollar ($130,000) check, Number 2829, more particularly described above in Paragraph 30 of this Indictment, into an account, Account Number 0102-093600, at the Bank of Guam which was described as an account for Rex International.

32. On about June 5, 1998, Goto deposited a check, Number 2831, dated June 3, 1998, made payable to Goto in the amount of Thirty Four Thousand Five Hundred Dollars ($34,500), drawn on the Flores Bank of Guam account, all of which moneys were proceeds of the bank fraud activity, into Goto's bank account, Account Number 0038-356348, at the Bank of Hawaii.

33. On about June 18, 1998, Shinohara deposited the Bank of Guam cashier's check, Number 589139, dated June 1, 1998, made payable to Shinohara in the amount of Thirty Thousand Dollars ($30,000), which he allocated between two accounts at First Hawaiian Bank in the following amounts, to wit: Twenty Five Thousand Dollars ($25,000) to First Hawaiian Bank Account Number 03-291421 and Five Thousand Dollars ($5,000) to First Hawaiian Bank Account Number 03-328503, all of which moneys were proceeds of the bank fraud activity.

All in violation of Title 18, United States Code, Section 371.

## COUNT 3 - MONEY LAUNDERING CONSPIRACY
[18 U.S.C. §1956(h)]

34. Paragraphs 1 through 12 of the Introduction of this Indictment are hereby adopted, realleged, and incorporated by reference as if fully set forth herein.

### CONSPIRACY

35. Beginning in about May 1998 and continuing thereafter to in about January 1999, more exact dates being unknown to the Grand Jury, in the District of Guam, the defendant, WILLIAM BRUCE SAN MIGUEL FLORES, also known as WILLY FLORES, together with others known and unknown to the Grand Jury, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, did knowingly and intentionally combine, conspire, confederate and agree together and with each other to conduct such financial transactions affecting interstate and foreign commerce, which transactions in fact involved the proceeds of a specified unlawful activity, namely, bank fraud, in violation of Title 18, United States Code, Section 1344(2); (a) with the intent to promote the carrying on of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in whole and in part to conceal and disguise

//

-9-

Case 1:05-cr-00031   Document 1   Filed 03/31/2005   Page 9 of 17

the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956 (a)(1)(B)(i).

## MANNER AND MEANS OF THE CONSPIRACY

Among the manner and means by which Defendant FLORES, together with others known and unknown to the Grand Jury, would and did carry out the conspiracy were the following:

36. It was a part of the conspiracy that Defendant FLORES, together with his co-conspirators, would and did execute and attempt to execute a scheme and artifice to obtain moneys, funds and credits owned by and under the custody and control of the Bank of Guam, by means of materially false and fraudulent pretenses, representations and promises.

37. It was further a part of the conspiracy that Defendant FLORES, and others known and unknown to the Grand Jury, converted the moneys, funds and credits obtained from the Bank of Guam for renovations and repairs at Pedro's Plaza to their personal benefit.

38. It was further a part of the conspiracy that Defendant FLORES, and others known and unknown to the Grand Jury, conducted financial transactions to distribute to themselves and others funds and monetary instruments obtained from the Bank of Guam by fraud.

39. It was further a part of the conspiracy that the Three Hundred Thousand Dollar ($300,000) disbursement was deposited into a checking account at Bank of Guam, Account Number 0101-091881, which was owned and controlled by Defendant FLORES. This account is hereinafter sometimes referred to as "the Flores Bank of Guam account."

40. It was further part of the conspiracy that on about May 11, 1998, Defendant FLORES submitted quotations and estimates to the Bank of Guam for the purchase of air conditioning units, doors and windows for renovations and repairs of Pedro's Plaza which had purportedly been obtained from P.I.C., Inc., and Malen International. The quotations and estimates were in fact fictitious having been prepared by Defendant FLORES. The quotations and estimates were submitted to the Bank of Guam for the purpose of causing and inducing the Bank of Guam to advance Three Hundred Thousand Dollars ($300,000) to the Partners.

-10-

41. It was further part of the conspiracy that on about May 27, 1998, the Partners, including Defendant FLORES, and others known and unknown to the Grand Jury, signed and later sent a letter requesting the Bank of Guam disburse Three Hundred Thousand Dollars ($300,000) to "facilitate the commencement of renovations and repairs."

42. It was further part of the conspiracy that Defendant FLORES, and others known and unknown to the Grand Jury, submitted a false and fraudulent request letter dated May 27, 1998 to Mike Naholowaa, a Bank of Guam representative.

43. It was further part of the conspiracy that on about June 1, 1998, Defendant FLORES was instructed by Shinohara to disburse funds intended by the Bank of Guam to be used for renovations and repairs at Pedro's Plaza to Shinohara from the Flores Bank of Guam account.

44. It was further part of the conspiracy that on about June 1, 1998, Defendant FLORES purchased two cashier's checks. At that time, Shinohara further instructed Defendant FLORES to purchase one of the cashier's checks in the amount of Thirty Thousand Dollars ($30,000) and made payable to Shinohara. Shinohara further instructed Defendant FLORES at that time to purchase the second cashier's check in the amount of Twenty Thousand Dollars ($20,000) and made payable to Connie Jo Leon Guerrero.

45. It was further part of the conspiracy that on about June 1, 1998, Defendant FLORES purchased the two cashier's checks as instructed by Shinohara funds obtained by bank fraud activity by negotiating a check, Number 2240, drawn on the Bank of Guam, Account Number 0101-091881, made payable to the Bank of Guam in the amount of Fifty Thousand Fifteen Dollars ($50,015), and bearing a memo notation that noted that the withdrawal was for "window/door seals/Pedro's".

46. It was further part of the conspiracy that on about June 2, 1998, Shinohara caused a Bank of Guam cashier's check, Number 589138, dated June 1, 1998, made payable to Connie Jo Leon Guerrero in the amount of Twenty Thousand Dollars ($20,000), all of which moneys were proceeds of the bank fraud activity, to be deposited into an account at

-11-

the Government of Guam Employees Federal Credit Union, Account Number 5866416680, which was owned and controlled by Connie Jo Leon Guerrero.

47. It was further part of the conspiracy that on about June 3, 1998, Defendant FLORES delivered a check, Number 2829, dated June 3, 1998, made payable to Rex International in the amount of One Hundred Thirty Thousand Dollars ($130,000), drawn on the Flores Bank of Guam account, all of which moneys were proceeds of the bank fraud activity, to Keun Yil Kim, a co-conspirator of Defendant FLORES.

48. It was further part of the conspiracy that on about June 3, 1998, Kim deposited the One Hundred Thirty Thousand Dollar ($130,000) check, Number 2829, more particularly described above in Paragraph 47 of this Indictment, into an account, Account Number 0102-093600, at the Bank of Guam which was described as an account for Rex International.

49. It was further part of the conspiracy that on about June 5, 1998, Goto deposited a check, Number 2831, dated June 3, 1998, made payable to Goto in the amount of Thirty Four Thousand Five Hundred Dollars ($34,500), into Goto's bank account, Account Number 0038-356348, at the Bank of Hawaii.

50. It was further part of the conspiracy that on about June 18, 1998, Shinohara deposited a Bank of Guam cashier's check, Number 589139, dated June 1, 1998, made payable to Shinohara in the amount of Thirty Thousand Dollars ($30,000), which Shinohara allocated between two accounts at First Hawaiian Bank in the following amounts, to wit: Twenty Five Thousand Dollars ($25,000) to First Hawaiian Bank Account Number 03-291421 and Five Thousand Dollars ($5,000) to First Hawaiian Bank Account Number 03-328503, all of which moneys were proceeds of the bank fraud activity.

51. It was further part of the conspiracy that on about September 3, 1998, Shinohara deposited a check, Number 2876, dated August 22, 1998, made payable to Shinohara in the amount of Four Thousand Nine Hundred Fifty Dollars ($4,950) into Shinohara's bank account, Number 03-291421, at First Hawaiian Bank.

52. It was further part of the conspiracy that on about October 10, 1998, Shinohara converted a check, Number 2895, dated September 21, 1998, made payable to Shinohara in the amount of Ten Thousand Dollars ($10,000), into currency.

53. It was further part of the conspiracy that on about November 16, 1998, Shinohara deposited a check, Number 1054, dated October 29, 1998, made payable to Shinohara in the amount of Twenty Thousand Six Hundred Dollars ($20,600), drawn on an account, Account Number 0100-006773, at Citizens Security Bank into Shinohara's bank account, Account Number 03-291421, at First Hawaiian Bank.

54. It was further part of the conspiracy that on about January 7, 1999, Goto deposited a check, Number 1062, dated January 4, 1999, made payable to Goto in the amount of Twenty Thousand Six Hundred Dollars ($20,600), into an account, Account Number 0038-356348, at the Bank of Hawaii.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 4 - MONEY LAUNDERING
(18 U.S.C. §§ 1956 (a)(1)(B)(i) and 2)

On about the 1st day of June, 1998, in the District of Guam, the defendant, WILLIAM BRUCE SAN MIGUEL FLORES, also known as WILLY FLORES, and others known and unknown to the Grand Jury, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the withdrawal from account number 0101-091881 at the Bank of Guam, a financial institution which is engaged in and the activities of which affect interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is bank fraud in violation of Title 18, United States Code, Sections 1344 and 2, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, and source of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is monetary instruments in the amount of

-13-

FIFTY THOUSAND AND FIFTEEN DOLLARS ($50,015), represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

### COUNT 5 - MONEY LAUNDERING
(18 U.S.C. §§ 1956 (a)(1)(A)(i) and 2)

On about the 1st day of June, 1998, in the District of Guam, the defendant WILLIAM BRUCE SAN MIGUEL FLORES, also known as WILLY FLORES, and others known and unknown to the Grand Jury, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the purchase at the Bank of Guam, a financial institution which is engaged in and the activities of which affect interstate and foreign commerce, of a cashier's check, Number 589138, in the amount of TWENTY THOUSAND DOLLARS ($20,000) payable to a third person, which involved the proceeds of a specified unlawful activity, that is bank fraud in violation of Title 18, United States Code, Sections 1344 and 2, with the intent to promote the carrying on of said specified unlawful activity, and that while conducting such financial transaction knew that the property involved in the financial transaction, that is monetary instruments, represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

### COUNT 6 - MONEY LAUNDERING
(18 U.S.C. §§ 1956 (a)(1)(A)(i) and 2)

On about the 1st day of June, 1998, in the District of Guam, the defendant, WILLIAM BRUCE SAN MIGUEL FLORES, also known as WILLY FLORES, and others known and unknown to the Grand Jury, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the purchase at the Bank of Guam,

a financial institution which is engaged in and the activities of which affected interstate and foreign commerce, of a cashier's check, Number 589139, in the amount of THIRTY THOUSAND DOLLARS ($30,000) payable to GIL SHINOHARA, which involved the proceeds of a specified unlawful activity, that is bank fraud in violation of Title 18, United States Code, Sections 1344 and 2, with the intent to promote the carrying on of specified unlawful activity, to wit: Engaging in a monetary transaction in property of a value greater than $10,000 derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957, and that while conducting such financial transaction knew that the property involved in the financial transaction, that is monetary instruments, represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

### COUNT 7 - ENGAGING IN MONETARY TRANSACTIONS IN PROPERTY DERIVED FROM SPECIFIED UNLAWFUL ACTIVITY
(18 U.S.C. §§1957 and 2)

On about the 18th day of June, 1998, in the District of Guam, the defendant, WILLIAM BRUCE SAN MIGUEL FLORES, also known as WILLY FLORES, and others known and unknown to the Grand Jury, did knowingly engage in a monetary transaction to a financial institution, affecting interstate and foreign commerce, in criminally derived property that is of a value greater than $10,000, that is, the deposit of a monetary instrument in the amount of THIRTY THOUSAND DOLLARS ($30,000) into account numbers 03-291421 and 03-328503 at the First Hawaiian Bank, a financial institution which is engaged in and the activities of which affected interstate and foreign commerce, such property having been derived from specified unlawful activity, that is bank fraud in violation of Title 18, United States Code, Sections 1344 and 2.

All in violation of Title 18, United States Code, Sections 1957 and 2.

//

-15-

## COUNTS 8 THROUGH 10
(18 U.S.C. §§ 1956 (a)(1)(A)(i) and 2)

59. Paragraphs 1 through 12 of the Introduction of this Indictment and Paragraphs 14 through 18, inclusive, of Count 1 of this Indictment are hereby adopted, realleged and incorporated by reference as if fully set forth herein.

60. On about the dates set forth below, in the District of Guam, the defendant, WILLIAM BRUCE SAN MIGUEL FLORES, also known as WILLY FLORES, and others known and unknown to the Grand Jury, aided and abetted one by the other, did knowingly conduct and attempt to conduct the financial transactions involving monetary instruments and affecting interstate and foreign commerce, listed below, which involved the proceeds of a specified unlawful activity, that is, bank fraud, a violation of Title 18, United States Code, Section 1344, with the intent to promote the carrying on of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions as described below, the Defendant knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

//
//
//
//
//
//
//
//
//
//

-16-

| Count | Date | Transaction Description | Check Number | Amount | Financial Institution | Account Number |
|---|---|---|---|---|---|---|
| 8 | 09/03/1998 | Deposit | 2876 | $4,950 | First Hawaiian Bank | 03-291421 |
| 9 | 10/10/1998 | Cash Check | 2895 | $10,000 | Bank of Guam | |
| 10 | 11/16/1998 | Deposit | 1054 | $20,600 | First Hawaiian Bank | 03-291421 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

DATED this 31st day of March, 2005.

A TRUE BILL.


Foreperson

NOEL L. HILLMAN
Chief, Public Integrity Section
Department of Justice

Approved.

RUSSELL C. STODDARD
First Assistant U.S. Attorney
Districts of Guam and NMI

By: _____
JOSEPH F. WILSON
Assistant U.S. Attorney

-17-