WFlores.PleaAgreement

NOEL L. HILLMAN
Chief, Public Integrity Section
Department of Justice
RUSSELL C. STODDARD
First Assistant United States Attorney
JOSEPH F. WILSON
JEFFREY J. STRAND
Assistant U.S. Attorneys
Suite 500, Sirena Plaza
108 Hernan Cortez Ave.
Hagåtña, Guam 96910
TEL: (671) 472-7332
FAX: (671) 472-7334

Attorneys for the United States of America

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 05-00031 |
| Plaintiff. | **AMENDED** |
| vs. | **PLEA AGREEMENT** |
| WILLIAM BRUCE SAN MIGUEL FLORES, also known as WILLY FLORES, | |
| Defendant. | |

Pursuant to Rule 11(c)(1)(B), the United States and the defendant, WILLIAM BRUCE SAN MIGUEL FLORES, also known as WILLY FLORES, hereinafter referred to as "the defendant", enter into the following plea agreement:

1. The defendant agrees to enter a guilty plea to Count 3 of the Indictment charging him with Money Laundering Conspiracy, in violation of Title 18 U.S.C. § 1956(h).

2. The defendant further agrees to fully and truthfully cooperate with Federal law enforcement agents concerning their investigation and prosecution of Bank Fraud, Money Laundering, related Conspiracies to Commit Bank Fraud and Money Laundering, Wire Fraud, Bribery, and other offenses involving violations of United States law. He agrees to testify fully and truthfully before any grand juries and at any trials or proceedings if called as a witness, subject to prosecution for perjury for not testifying truthfully. The United States will make this

cooperation known to the Court prior to the defendant's sentencing. The defendant further understands that he remains liable and subject to prosecution for any criminal schemes of which he does not fully advise the United States, or for any material omissions in this regard. In return for this cooperation, the United States agrees not to prosecute defendant for offenses now known to the government, or which he reveals to Federal authorities.

3. The defendant further agrees to submit to a polygraph examination by any qualified Federal polygraph examiner. The defendant understands that such polygraph examinations may include, but will not be limited to, his knowledge of or involvement in bank fraud and money laundering activities, his knowledge of others' involvement in such activities, and the identification of any and all assets and conveyances acquired in whole or in part by the defendant or others through such activities. Defendant understands that the government will rely on the polygraph in assessing whether he has been fully truthful.

4. The defendant understands that the <u>maximum</u> sentence for Money Laundering Conspiracy, in violation of Title 18 U.S.C. § 1956(h) as charged in Count 3 of the Indictment, is twenty(20) years incarceration, a $500,000 fine and a $100 special assessment fee, which must be paid at the time of sentencing. Any sentence imposed may include a term of supervised release of up to three (3) years in addition to such terms of imprisonment. Defendant understands that, if at any time while he is on supervised release he violates one of its conditions, his supervised release may be revoked and he may be subject to an additional two year term of imprisonment. If defendant cooperates as set forth in Paragraphs 2 and 3, the government will recommend that defendant receive the minimum term of incarceration recommended by the Sentencing Guidelines. If defendant does not fully cooperate as set forth in Paragraphs 2 and 3, the government will recommend whatever sentence of incarceration within the Guidelines range it may deem appropriate.

The government will recommend a fine within the Sentencing Guidelines range. If defendant is financially unable to immediately pay the fine in full, defendant agrees to make a full disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form (OBD-500) for purpose of fixing a monthly payment schedule.

Defendant understands that, by law, interest accrues on any remaining balance of the debt.

5. The defendant understands that to establish a violation of Money Laundering Conspiracy, in violation of Title 18 U.S.C. § 1956(h) as charged in Count 3 of the Indictment, the government must prove each of the following elements beyond a reasonable doubt:

<u>First:</u>   Beginning in about May 1998 and continuing thereafter to in about January 1999, more exact dates being unknown, in the District of Guam, there was an agreement between two or more persons to commit the crime of money laundering as charged in the indictment; and,

<u>Second:</u>   the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

6. The defendant understands that the United States Probation Office will calculate a "sentencing range" with the United States Sentencing Guidelines. The defendant understands the Sentencing Guidelines are advisory, but will be used by the District Court in fashioning the sentence. The defendant also understands that the facts he stipulates to herein will be used by probation, pursuant to §1B1.2 of the Sentencing Guidelines, in calculating the advisory guidelines level.

Further, if the defendant cooperates with the United States by providing information concerning the unlawful activities of others, the government agrees that any self-incriminating information so provided will not be used against defendant in assessing his punishment, and therefore, pursuant to § 1B1.8(a) of the Sentencing Guidelines, this information should not be used in determining the advisory guidelines range.

The defendant understands that notwithstanding any agreement of the parties, the United States Probation Office will make an independent application of the Sentencing Guidelines. The defendant acknowledges that should there be discrepancies in the final sentencing guideline's range projected by his counsel or any other person, such discrepancy is not a basis to withdraw his guilty plea. Pursuant to Federal Rule of Criminal Procedure Rule 11(c)(3)(B) [handwritten correction], the defendant also understands that if the court does not accept the sentencing recommendation made by the United States to the court pursuant to Rule 11(c)(1)(B) [handwritten correction], the defendant nevertheless has no right to withdraw his guilty plea.

7. The government and the defendant stipulate and agree to the following facts for purposes of the Sentencing Guidelines and that the Sentencing Guidelines range shall be determined solely from the facts set forth herein, to wit:

 a. The defendant was born on November 23, 1954, and is a citizen of the United States.

 b. Following the devastation on Guam caused by Typhoon Paka, which struck Guam on about December 17, 1997, the defendant had discussions with other persons concerning the purchase of Pedro's Plaza, a commercial property located in Hagåtña, Guam. Prior to May 1998, the defendant agreed with others to form a partnership, the Pedro's Plaza partners, for the purpose of purchasing Pedro's Plaza. In May 1998, the Pedro's Plaza partners agreed to purchase Pedro's Plaza for Two Million Dollars ($2,000,000). The Pedro's Plaza partners agreed to obtain and did obtain financing from the Bank of Guam, a financial institution insured by the Federal Deposit Insurance Corporation, for the purchase price and for a line of credit of up to One Million Dollars ($1,000,000) to be used for renovations and repairs to Pedro's Plaza.

 c. On about May 11, 1998, the defendant submitted quotations and estimates to the Bank of Guam which purportedly had been obtained from P.I.C., Inc., and Malen International. Those quotations and estimates were for the purchase of air conditioning units and windows for renovations and repairs of Pedro's Plaza. The quotations and estimates were in fact fictitious as they had been prepared by the defendant and not by agents of those companies. Neither were they authentic offers by those companies. The quotations and estimates were submitted to the Bank of Guam for the purpose of causing and inducing the Bank of Guam to advance Three Hundred Thousand Dollars ($300,000) to the defendant and the Pedro's Plaza partners.

 d. On about May 27, 1998, the defendant and the Pedro's Plaza partners signed a letter requesting the disbursement of Three Hundred Thousand Dollars ($300,000) to "facilitate the commencement of renovations and repairs" which disbursement the defendant and each of the Pedro's Plaza partners knew and had previously agreed not to use for its intended purpose of making renovations and repairs. The defendant intended that the Bank of Guam be misled and

4

deceived by the fake quotations and estimates he submitted. The deception and false representations by the defendant caused the Bank of Guam on about May 29, 1998, to deposit Three Hundred Thousand Dollars ($300,000) into Bank of Guam Account Number 0101-091881, an account controlled by the defendant.

    e. On about June 1, 1998, the other partner instructed the defendant, and the defendant agreed to disburse funds that the Defendant and all the Pedro's Plaza partners knew had been released by the Bank of Guam for the purposes of renovations and repairs at Pedro's Plaza to the other partner from the Bank of Guam, Account Number 0101-091881. The other partner further instructed the defendant to purchase two Cashier's Checks: one in the amount of Thirty Thousand Dollars ($30,000) made payable to the other partner; and, the other in the amount of Twenty Thousand Dollars ($20,000) made payable to the paramour of the other partner. The defendant purchased the two Cashier's Checks with a check written on the Bank of Guam, Account Number 0101-091881, and made payable to the Bank of Guam. The purchasing check contained on its face a memo notation that it was for "Pedro's windows". The defendant delivered the two Cashier's Checks to the other partner. The defendant was instructed by the other partner to conduct this financial transaction to conceal the nature and source of the proceeds and to promote the carrying on of the bank fraud.

    8. The defendant understands that this plea agreement depends on the fullness and truthfulness of his cooperation. Therefore, defendant understands and agrees that if he should fail to fulfill completely each and every one of his obligations under this plea agreement, or make material omissions or intentional misstatements or engage in criminal conduct after the entry of his plea agreement and before sentencing, the government will be free from its obligations under the plea agreement; thus defendant, in addition to standing guilty of the matters to which he has pled pursuant to this agreement, shall also be fully subject to criminal prosecution for other crimes, and for the counts which were to be dismissed. In any such prosecution, the prosecuting authorities, whether Federal, State, or Local, shall be free to use against him, without limitation, any and all information, in whatever form, that he has provided pursuant to this plea agreement or otherwise; defendant shall not assert any claim under the United States Constitution, any

5

statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other provision of law, to attempt to bar such use of the information.

9. The defendant understands that his sentencing may be continued, at the sole discretion of the United States, until after the indictment and trial of any associates involved. This will also enable the Court to see the full degree of the defendant's cooperation. The defendant therefore waives any right he may have to any speedy sentencing and hereby agrees to any continuance of his sentencing date as it may become necessary.

10. The defendant has been advised by his undersigned attorney and understands that the conduct charged in Counts 3 through 10 of the Indictment has exceeded the limitations of time in which that conduct could be charged. For considerations contained in this Plea Agreement, the defendant specifically waives his right to raise any bar or defense to prosecution for Count 3 of the Indictment based on any Statute of Limitations.

11. The defendant waives any right to appeal or to collaterally attack this conviction but reserves the right to appeal the sentence imposed in this case. If at any time defendant's guilty plea is rejected, withdrawn, vacated or reversed, the United States will be free to prosecute defendant for all charges of which it presently has knowledge, and any charges that have been dismissed will automatically be reinstated or may be presented to a grand jury with jurisdiction over the matter. In such event, defendant waives any objections, motions or defenses based upon the Statute of Limitations, Speedy Trial Act, or constitutional restrictions as to the time of bringing such charges.

11. The defendant acknowledges that he has been advised of his rights as set forth below prior to entering into this plea agreement. Specifically, defendant has been fully advised of, has had sufficient opportunity to reflect upon, and understands the following:

    a. The nature and elements of the charge and the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;

    b. His right to be represented by an attorney;

    c. His right to plead not guilty and the right to be tried by a jury and at that trial, the right to be represented by counsel, the right to confront and cross-examine witnesses against

him, and the right not to be compelled to incriminate himself, that is, the right not to testify;

  d. That if he pleads guilty, there will not be a further trial of any kind on the charges to which such plea is entered so that by entering into this plea agreement, he waives, that is, gives up, the right to a trial;

  e. That, upon entry of a plea of guilty, or thereafter, the Court may ask his questions about the offenses to which he has pled, under oath, and that if he answers these questions under oath, on the record, his answers may later be used against him in prosecution for perjury or false statement if an answer is untrue;

  f. That he agrees that the plea agreement is voluntary and not a result of any force, threats or promises apart from this plea agreement;

  ~~g. That he has had this agreement translated for him into his native language, and he fully understands it.~~

  g. ~~h.~~ The defendant is satisfied with the representation of his lawyer and feels that his lawyer has done everything possible for his defense.

DATED: 04/11/05

_____
WILLIAM BRUCE SAN MIGUEL FLORES
Defendant

DATED: 4/11/05

_____
PATRICK G. CIVILLE
Attorney for Defendant

NOEL L. HILLMAN
Chief, Public Integrity Section
Department of Justice

DATED: 4-11-05

By: _____
RUSSELL C. STODDARD
First Assistant U.S. Attorney

7